UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HERBERT B., <br><br>      Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br>      Defendant. | CASE NO. C18-5343-JCC-MAT <br><br> REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1961.[1] He completed high school, served in the military, and

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

REPORT AND RECOMMENDATION
PAGE - 1

previously worked as a material handler. (AR 27, 39-40, 47, 252.)

Plaintiff protectively filed a DIB application in April 2015, alleging disability beginning April 14, 2015. (AR 204-05.) He meets the insured status requirements to receive DIB through December 31, 2020. His application was denied at the initial level and on reconsideration.

On November 29, 2016, ALJ Allen Erickson held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 33-76.) On January 13, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 18-28.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on March 2, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's status post prostate cancer, status post traumatic brain injury (TBI), depression, and anxiety severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform medium work, with the following limitations: he can occasionally climb ladders, ropes, or scaffolds; he must have ready access to restroom facilities; he can understand, remember, and carry out short, simple instructions and perform routine tasks; he cannot work in fast-paced, production-type environments; he can make simple decisions; and he can occasionally interact with co-workers and the general public. With that assessment, and with the assistance of the VE, the ALJ found plaintiff able to perform his past relevant work as a material hander.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing a medical opinion and his symptom testimony. He requests remand for an award of benefits or, in the alternative, for further administrative

proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Medical Opinions

Plaintiff avers error in the ALJ's consideration of the November 26, 2016 opinion of examining psychologist Dr. Cynthia Collingwood. (*See* AR 919-34.) Dr. Collingwood identified diagnoses of cognitive disorder, not otherwise specified, severe, TBI, and major depressive disorder, with melancholic features, severe, and assessed a Global Assessment of Functioning (GAF) score of 35. (AR 932.) She stated plaintiff's depressive symptoms may improve with treatment, but that it would likely take more than a year given their severity, duration, and possible organic origin. (AR 933.) She recommended plaintiff be strongly encouraged to consider a trial of anti-depressants "since he has cognitive difficulty benefitting from classes, and supportive therapy has not produced significant change in two years." (*Id*.) His head injury symptoms were unlikely to improve, as they occurred decades ago, and were likely to worsen with age. His cognitive symptoms are fixed and stable, but, even if his depressive symptoms improved, "his cognitive functioning will not, and is likely to worsen with age. (AR 934.) Dr. Collingwood opined plaintiff would be unable to persist in a competitive setting for a normal work day/week, cannot relate adequately to employers and co-workers, and can manage only brief transactional interactions with the public. (*Id*.)

Dr. Collingwood also completed a medical source statement, wherein she indicated plaintiff's ability to carry out short and simple instructions, sustain an ordinary routine, work in coordination with or proximity to others, make simple work-related decisions, and get along with co-workers or peers would preclude performance/productivity for twenty percent of an eight-hour work day. (AR 920-21.) Plaintiff would be absent five days or more a month and "off task" more

than thirty percent of the workday. (AR 922.) Dr. Collingwood pointed to plaintiff's long history of TBI, for which he has a VA disability rating of seventy percent, and stated the onset of major depression "has overwhelmed his already limited ability to cope." (AR 923.)    The record in this case contained contradictory medical opinions from non-examining State agency psychologists Drs. Gerald Peterson and Gary Nelson, dated in July and August 2015 respectively. They found plaintiff had moderate limitations in the domain of concentration persistence, or pace, and, specifically, could understand, remember, and carry out detailed, but not complex instructions, make decisions, and attend and concentrate for extended periods. (AR 117-18, 129-30.) Dr. Peterson also opined plaintiff could interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. (AR 117-18.) The only other medical opinion of record is from Dr. Loreli Thompson, dated in December 2013 and relating to his VA disability claim. (AR 570-79.) Dr. Thompson identified diagnoses of major depressive disorder, moderate, and TBI, with the injury sustained during military service, in 1992 or 1993. (AR 570-71, 573.) Dr. Thompson opined plaintiff had "[o]ccupational and social impairment with reduced reliability and productivity." (AR 571.)[2]  Plaintiff was employed at the time of Dr. Thompson's 2013 evaluation (*see* AR 573), and continued to work up until his alleged onset date of April 14, 2015 (*see, e.g.*, AR 247, 251-52).

        The ALJ assigned little weight to the opinion of Dr. Collingwood, finding her report less persuasive than the longitudinal treatment records, and for the specific reasons discussed below. (AR 25-26.) He assigned significant weight to the opinions of Drs. Peterson and Nelson, but,

---

[2] Other options for the VA impairment rating include, *inter alia*, "occasional decrease in work activity and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation", "deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood", and "[t]otal occupational and social impairment." (AR 571.)

REPORT AND RECOMMENDATION
PAGE - 5

giving plaintiff the benefit of the doubt, further restricted him to short, simple instructions and routine tasks, not working in fast-paced, production-type environments, making simple decisions, and no more than occasional interactions with co-workers or the general public. (AR 27.) The ALJ assigned some weight to Dr. Thompson's opinion of occupational and social impairment, with reduced reliability and productivity secondary to a history of TBI, anxiety, and depression, finding the opinion consistent with the longitudinal record and noting its consideration in the formulation of the mental restrictions in the RFC.

Given the contradictory opinions, the ALJ could reject the opinion of Dr. Collingwood with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). The Court, for the reasons set forth below, finds the ALJ erred in considering the opinion of Dr. Collingwood.

As the ALJ observed, the most recent version of the Diagnostic and Statistical Manual of Mental Disorders (DSM) does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the Social Security Administration continues to receive and consider this evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066"). *See also Hughes v. Colvin*, No. 13-35909, 2015 U.S. App. LEXIS 6131 at *2 (9th Cir. Apr. 15, 2015) (ALJ did not err in failing to address a physician's GAF score "because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations.").

REPORT AND RECOMMENDATION
PAGE - 6

Nonetheless, the ALJ's discussion of the GAF score from Dr. Collingwood is flawed. The ALJ stated the assessed GAF of 35 "suggests some impairment in reality testing, such as illogical, obscure, or irrelevant speech[,]" and found that, while Dr. Collingwood "opines that these findings are present, her impression is wholly without support or corroboration from the claimant's treating mental health providers." (AR 25 (citations to record omitted).) The ALJ, however, provides only one of two explanations for the assigned GAF, omitting the alternative of "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood[.]" DSM-IV-TR at 34 (4th ed. 2000). While Dr. Collingwood found plaintiff's speech "quite tangential," requiring re-direction and involving slow and overly long responses, there is no indication of impairment in reality testing. (*See* AR 929 (plaintiff denied any history of auditory or visual hallucinations).) Moreover, Dr. Collingwood's finding of impaired mood and cognitive functioning and her depiction of plaintiff's work history supports the conclusion she based the GAF rating as reflecting major impairment in these or other areas. (*See* AR 928-29, 933-34.) For example, Dr. Collingwood states plaintiff was unable to keep multiple jobs for long following his TBI, and eventually found a menial job, performing the same tasks daily, with some accommodations from his employer. (AR 934.) "With age, and decreased physical functioning, coupled with the stresses of prostate cancer and the onset of severe depression, he lost his housing and his job, and has only been able to achieve a marginal standard of living with assistance from social services." (*Id.*) The ALJ, in sum, erred in misinterpreting the GAF score from Dr. Collingwood.

The ALJ next observed that notes from plaintiff's treating psychologist, dated the same month as Dr. Collingwood's report, described plaintiff as coherent, with goal-directed thought process, and good insight and judgment. (AR 25 (citing AR 874-75, 889-90, 902-03).) The ALJ

REPORT AND RECOMMENDATION
PAGE - 7

found Dr. Collingwood appeared to place great credence on plaintiff's subjective complaint he has no "'visual memory' in that he cannot visualize things, or remember the faces of family members[.]" (*Id*. (quoting AR 925.)  The ALJ noted such complaints were absent from the longitudinal treatment record and uncorroborated by any treating source.  Given these "unique complaints" and the fact plaintiff's representative had engaged Dr. Collingwood's services in order to "generat[e] favorable evidence" for plaintiff's disability claim, the ALJ had "reason to doubt the validity of the claimant's presentation to Dr. Collingwood." (*Id*.)

        An ALJ may properly reject the opinion of a physician to the extent the opinion is based to a large extent on a claimant's self-reports, and the ALJ properly discounted the claimant's reporting. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).  "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ "offered no basis" for conclusion medical opinions were based more heavily on self-reports, where letter and evaluation discussed treating providers' "observations, diagnoses, and prescriptions, in addition to . . . self-reports.")  Moreover, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *accord Lester*, 81 F.3d 832 (absent "evidence of actual improprieties," examining doctor's findings entitled to no less weight when examination procured by the claimant than when obtained by the Commissioner).

        While plaintiff may not have previously reported a visual memory deficiency, this omission in reporting, standing alone, does not reflect an actual impropriety or other evidence sufficient to

REPORT AND RECOMMENDATION
PAGE - 8

undermine Dr. Collingwood's report. Nor is it clear Dr. Collingwood relied in significant part on this or other aspects of plaintiff's reporting in rendering her opinions. Dr. Collingwood reviewed plaintiff's treatment records and other documents (*see* AR 924-26), conducted a mental status examination, and administered multiple tests (AR 928-33). After it became apparent from screening tests that plaintiff had impaired executive functioning, she administered additional tests to further explore that issue. (AR 931-32.) Plaintiff showed marked difficulty in executive functioning involving ordering, planning, and sequencing information, and had difficulty with tasks requiring he generate information or ideas on his own without structure and guidance. (AR 930.) Dr. Collingwood found plaintiff's "executive functions are his greatest weakness, and affect the rest of his cognitive abilities." (*Id*.) In contrast, and largely consistent with the findings of plaintiff's treating psychologist, Dr. Collingwood did not appear to find deficiencies in plaintiff's content of thought, insight, or judgment. (AR 929-31.) The ALJ, as such, erred in rejecting the opinion of Dr. Collingwood based on the purpose for which the report was obtained, in finding substantial reliance on plaintiff's subjective reporting, and in failing to address Dr. Collingwood's findings and opinion regarding a cognitive disorder.

The ALJ also identified inconsistencies in Dr. Collingwood's report. Dr. Collingwood described plaintiff as socially isolated and having no friends, while also noting he lives with his girlfriend, has a nephew who visits, and stays in touch with his adult daughter by telephone. (AR 25, 931.) She opined plaintiff would be unable to persist in a competitive setting due to psychiatric symptoms, but acknowledged his persistence in employment for fourteen years at a production laundry, despite having the same impairments and range of symptoms. The ALJ calls Dr. Collingwood's description of the "'menial'" laundry job as a "value judgment" without relevance in the disability determination, which contemplates whether a job is substantial gainful activity

REPORT AND RECOMMENDATION
PAGE - 9

(SGA), rather than menial or rewarding. (AR 25.) The ALJ notes plaintiff performed the laundry job at the SGA level. (AR 25-26.)

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599. In this case, even if it could be said the ALJ rationally interpreted some of the evidence from Dr. Collingwood as inconsistent or reflecting a problematic judgment, the ALJ's other errors undermine the substantial evidence support for his conclusion.

On remand, the ALJ should reconsider the report from Dr. Collingwood and, as needed, reconsider other medical evidence and opinions following a thorough consideration of this examining psychologist's findings and opinions. The ALJ should also ensure he has a complete copy of Dr. Collingwood's report. The copy of the medical source statement contained in the record may be incomplete, as it appears to cut off the portion of the form in which claimant may or may not have been rated as "Category IV," defined as precluding performance/productivity for thirty percent of an eight-hour work day. (*See* AR 919-21.)

<u>Symptom Testimony</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the

REPORT AND RECOMMENDATION
PAGE - 10

intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record. He found plaintiff had been "less than fully diligent in obtaining treatment for his mental impairments." (AR 24.) Medical records from April 2015 reported plaintiff's return to the VA mental health clinics for the first time since October 2012. (AR 364.) "Furthermore, the claimant has flatly declined medication consultations as part of his comprehensive mental health treatment, indicating that he prefers not to use medications, regardless of their potential therapeutic benefits." (AR 25 (citing AR 474).) Also, while participating in group therapy treatment on an intermittent basis, plaintiff failed to attend scheduled appointments for no stated reason. (AR 465, 468 (three missed appointments in May and June 2015).) The ALJ further contrasted plaintiff's testimony of anger and irritability with others, to the consistent reports of him as cooperative and appropriate during group therapy, and no evidence he was a risk of harm to himself or others. (AR 676-87.) In contrast to his complaints of confusion and poor memory, plaintiff's psychologist, in the most recent records from November 2016, described his thought process as coherent and goal directed, with good insight and judgment. (AR 874-75, 889-90, 902-03.)

Plaintiff rejects as factually incorrect and unfounded the ALJ's contention he flatly declined medication. He contends medication has been presented as one of a constellation of treatment options, and states: "At no point did any provider express that Plaintiff's choice of proceeding with therapy and other counseling among the treatment options as opposed to medications was considered against treatment recommendations." (Dkt. 10 at 5.)

REPORT AND RECOMMENDATION
PAGE - 11

An ALJ properly considers evidence associated with a claimant's treatment, 20 C.F.R. § 404.1529(c)(3), SSR 96-7p and SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039.  The record in this case supports a conclusion plaintiff repeatedly declined or, as Dr. Collingwood stated, "expressed a preference for no psychiatric medications[.]"  (AR 925-26.)  (*See, e.g.*, AR 364, 474 (April 20, 2015: "Writer discussed treatment opinions to help with chronic pain and improving mood.  Veteran declined medication consultation, 'I don't prefer to take medication.'; plaintiff opted to participate in several classes); AR 554-55 (July 13, 2015: with report of worsening symptoms, provider discussed treatment "options both pharmaco and behavioral therapy."; patient open to behavioral treatment already engaged in and would consider antidepressant at a later time); AR 550 (July 14, 2015:  patient "requesting this be treated prior to considering any medication for depression"); AR 715-16 (May 18, 2016: return to clinic following major depression, resulting in eviction, living in car, and frequent suicidal ideations:  "Writer discussed pharmaco and psychotherapy treatment options.  Veteran declined pharmacotherapy options at this time."))

If the ALJ again considers issues of treatment on remand, he should consider all relevant evidence associated with treatment recommendations and follow-through.  Pertinent to this analysis will be the fact that plaintiff, shortly before the hearing, expressed an interest in starting an antidepressant (AR 688 (October 23, 2016)), that both plaintiff and Dr. Collingwood discussed the insufficiency of the treatment provided, and that Dr. Collingwood strongly suggested the use of medication given that insufficiency (*see* AR 925-26 (plaintiff "expressed a preference for no psychiatric medications, so was instead sent to behavioral classes, which his providers did not recognize he would have difficulties understanding and remembering."; "impaired executive functioning does not allow him to realize that something might not be helpful to him because of

his limitations, but he was compliant with the referral."); AR 929 ("I keep going [to the VA] and they keep giving me classes I can't remember, I still feel depressed."); and AR 933 (plaintiff "should be strongly encouraged to consider a trial of anti-depressants since he has cognitive difficulty benefiting from classes, and supportive therapy has not produced significant change in two years."))  Also, given the need to reassess the evidence from Dr. Collingwood, the ALJ must reassess any evidence associated with plaintiff's complaints of confusion and poor memory.

Plaintiff does not otherwise directly challenge, nor does the Court find any additional error in the ALJ's other reasons for not accepting plaintiff's symptom testimony, including other evidence suggesting a lack of diligence in obtaining and complying with treatment, and inconsistency between plaintiff's allegations of irritability and anger and other evidence in the record.  However, because this matter is subject to remand for other reasons, the ALJ should reassess plaintiff's symptom testimony as a whole on remand.

### Remand

A remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1099).  *See also Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.").  Plaintiff here requests an award of benefits, but does not provide any argument supporting the existence of the rare circumstances necessary to warrant such an award.  It is not clear the record in this case has been fully developed or that further proceedings would serve no useful purpose.  *See Brown-Hunter*, 806 F.3d at 495.  Outstanding issues, including a full assessment of the findings and opinions of Dr. Collingwood and a conclusion at step five, must be resolved before a disability determination

REPORT AND RECOMMENDATION
PAGE - 13

can be made. *See id.* Accordingly, this matter is properly remanded for further administrative proceedings.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 1, 2019**.

DATED this 16th day of January, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14